*207 PETITION FOR A RE-HEARING, BY
D. MAYES, ESQ.
As one of the counsel for the appellants, I feel constrained by a sense of duty, most respectfully to ask a reconsideration of this case, being thoroughly convinced from no inconsiderable reflection and a full examination of authorities, that the decison of the case cannot be supported.
Before I enter upon an examination of the case, I would respectfully ask of the court to review the cases refered to in the brief furnished by me upon the argument. Many of those cases will be found to rest on principles irreconcilable with the decision in this case, and none will be found to support it.
For the purpose of being as brief as possible, I shall forbear to cite them here or remark upon them, but will attempt by reasoning and authority, independent of them, to shew that the re-hearing asked should be granted.
With a view to perspecuity I copy that portion of the will out of which arises the present contest. It is as follows:
“I will to my daughter Jane, one negro girl named Nan, and issue, also one mulatto boy named Jack until he is of the age of 26 years, and in that time to be learned the art and mystery of shoe maker, and to be taught to read, and when he comes to the age mentioned, then to be free or at liberty to work or labour for himself, also one horse and saddle and one cow; also, I will to my daughter Cynthia Kid, one negro boy named Captain, one named Monday, also one negro wench named Jude, and issue, also one named Emma, and issue, also one named Fanny, also one horse and saddle, bed and furniture, two cows and one third of the Household furniture, and if one of my daughters should die before the other, leaving no issue, I will, that the part willed to her, should go to the use and benefit of my other surviving daughter, and if both should die without issue, then I will that my beloved wife should enjoy the property willed to them during her life, and at her death, leaving no lawful issue, then I will that said *208 property be equally divided between sister Isabella Howe and sister Jane Howe’s children”
The question is whether any of these devises over are made to depend upon an indefinite failure of issue, and so are so remote.
I shall waive all examination of the 1st and 3d devises. (although I do not consider them as being as clearly against me as the court seems to have done.) and examine the opinion as it relates to the second devise. In examining that, the court say, "whether a man can make a devise over, to take effect after an indefinite failure of issue, is a question of power, but whether a devise is of that character or not, is a question of intention, and the expression of dying without issue, has been construed to mean an indefinite failure of issue, only because it was supposed, when taken alone, to indicate such to be the intention of the testator, but when the devise over must lake effect, if at all, in the life of a person in being; it is plain that to construe the expression to mean an indefinite failure of issue would be inconsistent with the intention of the testator. And to effectuate that intention, therefore, the expression of dying without issue, ought and must in all such cases, be construed to be a dying without issue living, at the time of the death, on which the devise over is made to depend.
This principle applies to, and must govern the present case; for the devise over here, after the death of the testator’s daughters, is in express words that his wife should enjoy the property willed to them during her wife. But it is contended that the subsequent words “and at her death, leaving no lawful issue,” gives her, notwithstanding the express devise to her for life, an estate in fee, by implication, and that consequenty, although she had died before her daughter, if she had left issue, the issue would have taken under the devise, and as the devise might thus take effect after her death, the principle we have mentioned does not apply. The words “and at her death leaving no lawfull issue.” ought, we are induced to think, to be construed to be a devise to the issue by implication but, we cannot admit that they ought to operate to enlarge the estate of the wife, *209 and thereby vest in her an absolute property, or fee simple estate, and if they cannot so operate, the issue, if they had taken, must have taken by purchase and not by descent or representation.”
This, then, is the pivot upon which the case is made to turn. I contend that by this devise the wife took an estate tail, and that her issue would have taken by representation.
The devise being that the wife shall have the use during her life, I premise that the devise of the use is a devise of the thing itself. See American law Journal, 1st vol. page 45, and authorities there cited. In this case the court consider the will as giving the wife a life estate, but say the subsequent words do not by implication enlarge that estate. I contend that they do. A devise to one without specifying any estate is only a devise of a life estate; this is so familiar that authorities are considered unnecessary to support it; however, I refer to Douglass 763. Right, lessee of Mitchell and wife vs. Sidebotham and al. Cowp. 238, Bowes vs. Blacket, Ibid 355. Loveacres vs. Blight and ux. Ibid 306, Hogan vs. Jackson, I lay down this principle to show, in connexion with the one preceding, that the devise of the use to the wife, for life, is equivalent to a devise to her without a specification of any estate. In Lippett vs. Hopkins, 1st Gallison’s Reports, 453, Judge Story says—
“If a devise be made to one without specifying any estate, and in case of an indefinite failure of issue, a devise over, the first devisee shall take an estate tail, for it is manifest, that the devisor intended a benefit to the issue, and that the estate should not cease but on a general failure, and this intention can be effected only by declaring the estate a fee tail in the ancestor, and even where the estate to the first devisee has been expressly limited for life, and a devise over, upon a like failure of issue, the same construction has prevailed.” In support of the first of these positions, the learned Judge cites Forth vs. Chapman, 1 P. Wms. 664. King vs. Rumball Cro. Jac. 448, Wyld vs, Lewis 1 Atkyns 432. Denn *210 vs. Slater, 5 T. R. 369. Hope vs. Taylor, 1 Burr. 268-9, Co. 127. Moore 682, 1 Vent. 231, 2 P Wms. 194, 1 P. Wms. 605, Com. Dig. Devise N. 5, 3 Mod. 123, 1 Rolls Abr. 837, 4 Burr. 2246. Hob. 64, Cro. Jac. 599, Willes R. 1. I have examined many of the authorities and they seem fully to support the principle advanced. In support of the second position he refers to Forth vs. Chapman, 1 P. W. 667, Target vs. Gant, 1 P. W. 436. Price vs. Smith, Willis 1. In the case of Price vs. Smith the language of Lord Ch. J. Willis is full and express to the point now in discussion. Says he, if a man devise an estate to A. or to A. for life without saying more, and afterwards, in the same will, devise the estate to another, in case A. dies without issue, the. subsequent words, will enlarge A’s, estate by implication and give him an estate tail.
Thus I have shown that the wife’s estate is enlarged by the subsequent words. But what is, if possible, more clear and decisive for me, is, that where no estate whatever, has been directly devised, upon the implication arising from the devise over on the failure of issue, the devisee has been permitted to take an estate tail. In Goodright on the demise of Goodridge vs. Goodridge, Willis’ Rep. 369, the devise was, “and my will is, that if my son Richard do happen to die without heirs, then my son John shall enjoy my land.” Here was no devise to Richard, yet it was held, that by necessary implication, he took an estate tail; not a fee, because the devise over being to John, he could not die without heirs while John was living, and so the word heirs should be understood heirs of the body of Richard And this estate in tail, by implication was here adjudged to arise, notwithstanding the court fully recognize the rule laid down, in Sprit vs. Bence, Cro. Car. 368, that words of a will which disinherit an heir, ought to have a clear and apparent, intent, and not to be ambiguous or any way doubtful, “and (says the court) surely no words can be more plain and clear and less doubtful and ambiguous than the words of the present will are,”
Now, in the present case, had the words “then I *211 will that my beloved wife should enjoy the property willed to them, during her life,” been wholly omitted; and the words “and at her (the wife's) death, leaving no lawful issue, then I will that said property be equally divided between sister Isabella Howe and sister Jane Howe’s children,” alone inserted, the words of Lord Ch, J. Willis, would have applied emphatically, that surely no words could be more plain and clear, and less doubtful and ambiguous, than the words of the present will are; and the wife under these words alone, would clearly have taken an estate tail. So that it is not necessary that these latter words should, as the court intimate operate to enlarge the estate of the wife to support our position; but it is necessary that the court should construe the former words, so as to narrow the estate which the wife would take, under the latter, to maintain their opinion. We do not deem it essential to enlarge the former by the latter; for strike out or disregard the former, and place it on the latter alone, and the court must show that the former words restrict the latter, before the opinion can be supported. And such a construction would, not only, be contrary to reason but to established law. For a devise to A. for life, and after his decease to bis issue, is an estate tail, See 1 Vent. 214, 225, 2 Lev. 58, 2 Ld. Raymond 1440, 2 Wilson’s Rep. 6, Ibidem 322. So a devise to A. and his issue, is an estate tail. Gilbert’s law of Dev. 33, Comyns’ Rep. 372, 2 Ld. Raymond 1440. There are other authorities to the same effect; it is unnecessary to refer to them, as the principle is clear. .
So a devise to A., (which in itself, is but a life estate,) and if he died without issue, remainder over, is an estate tail. Cro. Jac. 448. 1 P. Wms. 229, 1 Vesey 24, 1 P. Wms. 685. So a devise to A. and his heirs, and if he die without issue, remainder over, is an estate tail. Cro. Jac. 695, Comyns’Rep. 539, 3 Wms. 244. This seems to hedge in the subject so completely that there is no escaping from my conclusion, unless the case of Goodright vs. Goodridge can be overturned. That cannot be done; it is not impugned by any case, but on the *212 contrary, is supported by the case of Walter vs. Drew. Comyns Rep. 372, and by the host of cases refered to in the case itself. The case of Walter vs. Drew is this, “it is my will that if William Wicks, my son, shall happen to die, and leave no issue of his body, lawfully begotten, that then, in that case, and not otherwise, after the death of the said William, I give and bequeath all my lands of inheritance in Lawlissick unto the said Richard my son, to have and to hold the same after the death of the said William, to him and his heirs;” held that. William took an estate tail by this will. And the same principle is asserted in Lippett vs. Hopkins, 1st Gallison 459.
Thus I have hinted at one of the reasons why I conceive a re-hearing should be granted.
But to concede that the devise over to the wife is of an estate for life only, and not in tail; it does not follow that the preceding estate was not an estate to terminate upon an indefinite failure of issue. Suppose the wife had died before Jane the daughter, then the devise over to Issabella Howe and Jane Howe’s children, comes in It would b he absurd to say, that the testator did not intend, that they should take unless his wife outlived his daughters. they were all objects of his bounty, and none can doubt but that he intended to provide for them, in the event that his daughters died without issue, and his wife died leaving no lawful
issue, without regard to the order of time in which these events took place. Hence the devise over to Isabella Howe and Jane Howe’s children, might take effect, after an indefinite failure of the issue of the testator’s daughters; upon the whole of this branch of the subject, I would beg leave to ask the attention of the court, to the reasoning and authorities, in the case of Goodright vs. Goodridge, before refered to, and more especially to the case of Lilibridge vs. Adie, 1 Mason’s Rep. 234. There the devise was to the wife for life, and after her decease to his two daughters, A. and B. to them, their heirs and assigns, but in case they should die without issue, that the same should go to, and vest in their two sisters, *213 C. and D. Held that the devise to A. and B. was a fee tail, and not a fee simple, the contingency upon which the limitation was to take effect, not being limited to a life in being, but was upon an indefinite failure of issue. In this case the court did not deem it necessary to decide whether the daughters C. and D. took estates for life or in fee.
The opinion of Judge Story, in that case, seems, with full reference to authority, to settle the present case for me, and as his views are clear and perspicuous, I would here beg leave copiously to extract from him, with reference to the numerous authorities, by which his positions are supported. “In no branch of the law, (he wisely observes,) is a more cautious examination of authorities necessary, and indeed in no branch are the principles more generally built upon nice and technical reasoning. It is quite another consideration, whether those principles were originally the most correct or equitable, that could have been adopted. It is sufficient that they are now incorporated into the law, and cannot now be separated from it, without shaking the very foundations of all landed titles. We are at liberty, in last wills and testaments, to effectuate, the intention of the testator, if by law, it can be done. But in ascertaining what that intention is, the construction which has been put upon like words, and the artificial rules by which it is sifted, and fixed in the authorities, are to be our inflexible guides, where they distinctly and pointedly apply, we are not permitted to indulge in conjectures, however plausible, as to the private intention of the party, when the law has pronounced its own mode of investigating and deciding it.” He then proceeds amongst others to establish the following propositions.
The words "dying without issue,” in reference to freehold estates, are to be construed, an indefinite failure of issue, unless there be something in the context which manifestly confines the sense to a definite period of time, he refers to Fearn Ex. Dev. 357, 361. Butler’s edition 471, 476. Crook vs. DeVandeg, 9 Vesey Jr. 197. Dawsy vs. Griffiths, 4th Mawle, and Selwyn, 61.
*214 Assuming that the devise over gave only a life estate to Mary and Charlotte, it does not follow that the previous estate is at all events to be held as a fee simple. That is only one circumstance from which an intent to limit the contingency to the death of the first devisee may be infered, but it is not decisive, as to the extent of the estate previously devised, for such a contingency may as well be limited upon an estate tail, as an estate in fee. Spalding vs. Spalding, Cro. Car. 185, and cases cited in 1 Gallison 465. Fearn Exec. Dev. 308, 398.
In Porter vs. Bradley Lord Kenyon said, "If the devise had been, and in case be (A.) shall die without heirs then over,” it would have given to A. an estate tail. Yet there was in that case a subsequent limitation, on failure of A’s. issue, to the testator’s widow for life. So in Webb vs. Hering, Cro, Jac. 415, the devise was "to A. my son, after the death of my wife, and if my three daughters or either of them, do outlive their mother and A. their brother, and his heirs, then they to enjoy the same for term of their lives,” and it was held that A. took an estate tail only, see also Tyte vs. Willis, Cas. Temp. Talb. 1. Forth vs. Chapman, 1 P. W. 663, Roe vs. Scott, Fearn Exec. Dev. note by Powell, page 363. It may also be admitted, as asserted
by the late learned Mr. Fearn, that although an executory devise in fee, or in tail to one in esse after a dying without issue is void. Yet that an executory devise for life to one in case to take place after a dying without issue may be good, because in the latter case, the future limitation, being only for the life of one in esse, it must necessarily take place during that life or not at all, and, therefore, the failure of issue, in that case, is confined to the compass of a life in being. Before I proceed, permit me to make two applications of what has preceded.
1st. It is said an executory devise in tail, or in fee to one in esse after a dying without issue is void. See also Fearn on remainders, 376, Butler’s edition 488.
*215 It has been shown that the devise to the wife was in tail.
That devise was after a dying of the daughters without issue.
The devise over to the wife was void; and so she held not as devisee in tail of the first testator, but as devisee in fee of the first taker.
2d application. It is said an executory devise for life, to one in esse, to take place after a dying without issue, may be good, because in the latter case the future limitation being only for the life of one in esse, it must necessarily take place during that life, or not at all. Then to make it good—
It must be only an estate for life, that is limited. Here the widow has an estate tail. Here also, is the limitation to Isabella Howe and Jane Howe’s children Can this be said to be only for the life of one in esse.”
I now proceed with the case. Immediately after the words last quoted, Judge Story proceeds. “But it by no means follows, from this admission that every such limitation over for life, is to be construed an executory devise, for an estate for life may well be limited to take effect, after an indefinite failure of issue, in which case it is a mere vested remainder for life, after an estate tail. Fearn on remainders, 148, Butler’s edition, 215, &c.” Now if every limitation for life, shall not be construed an executory devise, and if an estate for life may well be limited to take effect after an indefinite failure of issue, it seems to me that the reasoning of the court founded upon the supposition that the wife’s was a mere life estate, (which I hope I have shown to be untenable,) wholly falls short of establishing the conclusion attempted to be deduced from it, that the testator in using the words “dying without issue meant, without issue living at the time of the death. This conclusion is not warranted in law or in logic, and yet it is only reached by omitting to notice the additional devise over to Isabella Howe and Jane Howe’s children.
*216 The learned judge from whom I have been extracting so copiously, and who is so fortified by unquestionable authorities, does not so reason. His language is "what, therefore, shall be the effect of a limitation over for life, to one in esse, after a previous estate devised, which may be within an estate in fee or in tail, depends upon the context and the intention of the testator to be collected from the whole will.”
I should too far trespass on the time of the court were I further to extract from this very able case, I would entreat the serious attention of the court to the case itself, and to the numerous authorities there refered to, all of which I humbly believe will constitute a mass of legal learning, imperiously requiring a revision of the decision in this cause.
I would here beg leave to remark that it has, in examining the decision in this case, occurred to me, as extraordinary, and an unwarrantable latitude, to held that the testator means different things, when in two, devises, he uses language which means the same thing, when tested by the technical rules adopted by law, to search out the meaning of the testator, and when he uses language which when tested by these same rules means different things, to hold that he meant the same thing. As long as words shall remain the means by which we make known our intentions, so long will such interpretations be destructive to all certainty, and consequently of all security in relation to the titles of property held by devise.
But strange and destructive as such a mode of interpretation is, yet has the court adopted it in this case, and by no other than this extraordinary mode of reasoning, (a mode the dangerous tendency of which is only equalled by its novelty, and the confusion and uncertainty to which it leads,) can a conclusion be arrived at, which puts down the claim of my client.
The first devise is confessedly and obviously, in tail.
*217 A devise to one for life and after his death to the issue of the devisee, is confessedly and obviously an estate tail.
The third devise is to the wife for life express, and after her death to her issue by necessary implication, and so acknowledged in the decision, and even without the express devise to the wife, the words respecting her issue would give her an estate fail. by necessary implication.
Although the 1st and 3rd are thus clearly estates yet the decision assumes them to be indicative of a difference of intention in the devisor.
Dying leaving no issue, the court say, (and I am willing to admit correctly.) shall be construed no issue living at the time of the death.
Dying without issue, the court admit, is in itself indicative of an intention to make the devise over dependant on an indefinite failure of issue. Yet when the testator uses the first, which means one thing, and second, which means another, the conclusion is, that by the opposing modes of expression he meant one and the same thing. And thus, I would most respectfully suggest, it appears to me that the court have proved things which the law pronounces different, to be the same, only by assuming that those which the law pronounces the same, are different. It is hoped that if the reasoning here attempted to be adduced, and the authorities here refered to, do not fully and fairly prove that the decision given is untenable, they may be found so to bring it into doubt as to prevail on the court to grant that rehearing which is so anxiously asked. Not only is this case in itself one of great interest and magnitude, from the rights and interests dependent upon its decision, but of vital importance as it relates to the settling or unsettling fixed rules of construction in relation to last wills and testaments, upon which a great number of estates must hang. With diffidence, but with humble confidence, these remarks are respectfully submitted.
Extract from Dunlap’s will.
Statement of the subsequent events.
One question stated.
On this Petition, the decision of the case was suspended till the present term; the motion for a rehearing was overruled.